FILED
2002 May 31 AM 10:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BARBARA HOSEA STUDDARD, | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ] |
| | ] CV-01-N-0531-S |
| BESSEMER STATE TECHNICAL | ] |
| COLLEGE, | ] |
| | ] |
| Defendant(s). | ] |
| | ] |

ENTERED
MAY 3 1 2002

## MEMORANDUM OF OPINION

This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq., and 42 U.S.C. § § 1981 and 1983.

The plaintiff, Barbara Hosea-Studdard is an African-American female who has been employed by Bessemer State Technical College since October of 1988. She worked as a Commercial Art Lab Instructor, Art Instructor and Placement Follow-Up Analyst before she was hired for the position of Director of the Displaced Homemakers/Sex Bias Elimination Project, commonly known as the MIRROR program, in September 1991. She remained Director of this project until October 1, 1999, when Bessemer State discontinued the program after a change in federal funding. Ms. Studdard claims Bessemer State terminated her from her position as Director of the MIRROR program and declined to hire her for four other positions due to discrimination against her on the basis of her race and in retaliation for filing EEOC charges and

lawsuits.[1]

The cause is presently before the court on Bessemer State's Motion for Summary Judgment, filed March 25, 2002, (Doc. 39), Ms. Studdard's Motion to Strike, filed April 15, 2002. (Doc. 44), and Defendant's Motion to Strike, filed May 13, 2002 (Doc. 51).[2]

I.   **The Plaintiff's Motion to Strike**

Ms. Studdard moved to strike the affidavit of Ronald M. Moon, claiming statements therein contradict his deposition testimony. The court has examined Mr. Moon's affidavit and the relevant portions of his testimony in the record and finds no inconsistency.

Mr. Moon is the Dean of Instruction at Bessemer State. In his deposition, Mr. Moon testified that new federal Perkins legislation required schools to use Perkins funds for fourteen activities and permitted use of the funds for other activities. He said the SAT[3] found the required activities were priorities and recommended the basic grant funds be used to carry out the required activities. (Doc. 48, Ex. A, p. 45). He did not know why the team did not continue the MIRROR Program as a permitted activity. *Id.* pp. 57, 46. In Paragraph 15 of his affidavit, he stated:

---

[1] Ms. Studdard also brought claims for gender discrimination, but is no longer pursuing those claims. Doc. 43, p. 18.

[2] The facts set out in this opinion are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie Pension Fund,* 17 F.3d 1386, 1400 (11th Cir. 1994).

[3] The SAT, or "Strategic Analysis Team," was assembled by Bessemer State's President Bailey in compliance with the Alabama state plan for technical education. The SAT was charged with developing the college plan for Bessemer State, which would be submitted to the U.S. Department of Postsecondary Education and would ultimately become the application to the federal government for Perkins Act funding. President Bailey chose representatives from the college and local business, industry and labor to serve on the SAT. There is no evidence that President Bailey was involved with the SAT's work. Doc. 40, ¶¶ 48-56; Doc. 43, ¶¶ 48-56, Ex. 1.

> The report produced by the SAT indicated that certain activities and jobs
> [at Bessemer State] that were previously being funded with Perkins
> funding were incongruent with the SAT's current assessment of the needs
> of the college, the student body demographics, and the activities that were
> required to be undertaken with Perkins Act funds. In particular, the SAT
> concluded that the Perkins funds were not best utilized by segregating the
> Displaced Homemakers/Sex Bias Elimination Project into a single,
> separate program.

Doc. 41, Ex. 1, ¶ 15. There is no contradiction in this evidence.

Mr. Moon also stated Ms. Studdard was interviewed for four newly created positions, but the selection committee did not include her among the three best qualified applicants submitted to President Bailey for the final selection.[4] (Doc. 41, Ex. 1, ¶¶ 28, 29, 35, 39). In his deposition, Mr. Moon testified he was not involved in the hiring process and did not know why the selection committee excluded Ms. Studdard from the lists of applicants submitted to President Bailey. (Doc. 48, Ex. A, pp. 132, 134, 142-143, 150-151). The testimony that Mr. Moon did not know the reason behind the selection committee's choice is not contradicted by his statements about what choices they made, and the motion to strike this evidence will be denied.

Ms. Studdard also claims Mr. Moon made contradictory statements about her employment status at Bessemer State. In his deposition, Mr. Moon stated she was a

---

[4] The general hiring process utilized by Bessemer State is mandated by a consent decree entered in *Shuford v. Alabama State Board of Education*, 846 F.Supp. 1511 (M.D. Ala. 1994) and *Shuford v. Alabama State Board of Education*, 897 F.Supp. 1535, 1543 (M.D. Ala. 1995). The consent decree applies to all institutions in the Alabama post-secondary system and requires each institution to, *inter alia*: (1) adopt a written equal employment and promotion policy prohibiting race and sex discrimination; (2) follow detailed personnel processes designed to ensure African-Americans and women "equal and effective participation in the personnel decision-making process;" and (3) follow numerical hiring goals set out in the decree. The parties agree that the *Shuford* hiring procedures require posting of job vacancies, including salary range, responsibilities and selection criteria. The selection committee charged with responsibility for screening the applications and interviewing qualified applicants must be at least 40% African-American and 50% female in composition. All applicants who meet the minimum requirements must be given an interview, but the selection committee can limit the number of interviews to ten if more than ten qualified applications are received. After the interviews, the committee must recommend three names to the President of the institution, unranked, in alphabetical order. The President may select one of the recommended individuals to fill the job at issue, but is expressly prohibited from hiring any person other than one of the three recommended by the interviewing committee. The validity of the *Shuford* plan is not an issue in this lawsuit.

tenured employee, but in his affidavit he stated she was a contract employee subject to yearly renewals of her contracts. Ms. Studdard claims her contract could not be terminated at the end of a year because Mr. Moon testified she was tenured. In response, the defendant argues the statements are not contradictory, and that Ms. Studdard was a "tenured employee whose employment was subject to a contract that was renewed yearly as long as funding permitted." Defendant submitted Ms. Studdard's employment contract for the period September 1, 1998, to August 31, 1999. (Doc. 41, Ex. 2). The contract provides that "[c]ontinued employment beyond the contract period for personnel who administer activities funded by federal programs or projects, and/or whose salaries are partially or totally funded from federal monies, is contingent upon the continuation of such federal funding." *Id.* at ¶ 9. Ms. Studdard acknowledged that all of her employment contracts with Bessemer State included the notification that the employment would discontinue if federal funding was discontinued. Doc. 40, ¶ 30; Doc. 43, ¶ 30. Furthermore, she did not submit the Moon deposition testimony upon which she relies to claim she is "tenured." In absence of any context to determine Mr. Moon's meaning, Mr. Moon's testimony that Ms. Studdard was tenured cannot be found to contradict the evidence showing Ms. Studdard was also a contract employee subject to yearly renewal.[5]

---

[5] Ms. Studdard was offered and afforded a pre-termination hearing with an attendant right to administratively appeal the termination decision. The panel selected to hear Ms. Studdard's post-termination appeal concluded that an intervening decision of the Alabama Court of Civil Appeals, *Athens State College v. Betty Ruth*, 795 So.2d 703 (Ala. Civ. App. 1999), prohibited termination of a nonprobationary employee under the Fair Dismissal Act if the employee was qualified for another open position at the institution, notwithstanding the *Shuford* consent decree. Bessemer State filed a *certiorari* action in the Circuit Court of Jefferson County, and prior to the issuance of an opinion in that proceeding, the Alabama Supreme Court reversed the *Betty Ruth* decision. *Ex parte Athens State College*, 795 So.2d 709 (Ala. 2000). Nevertheless, the Jefferson County Circuit Court granted summary judgment for Ms. Studdard. Bessemer State appealed the decision to the Alabama Court of Civil Appeals, and the parties await that court's

Finally, Ms. Studdard takes issue with Mr. Moon's statement that "Bessemer State would have been paying Plaintiff to do nothing had it retained her in the same position because all of the activities for which Plaintiff was responsible were totally eliminated." Doc. 41, Ex. 1, ¶ 11. She claims Mr. Moon testified that he knew Perkins basic grant funds could be used to fund plaintiff's program, and that Dr. Fred Gainous, Chancellor of the two year college program, strongly urged all colleges to continue the program through basic grant funds. However, Mr. Moon's statements are not contradictory on their face or in the context of this case. The defendant points to evidence showing the funds specifically earmarked for the Displaced Homemakers/Sex Bias Elimination Project were eliminated in the 1998 amendments to the Perkins legislation. Doc. 41, Ex. 3; Doc. 48, Ex. B. The activities that were a part of the Displaced Homemakers/Sex Bias Elimination Project were permitted, but not required under the new legislation. Doc. 48, Ex. B. The Strategic Analysis Team was required to give priority to required activities and chose to concentrate all the Perkins funds on required activities. *Id.* Thus, the evidence is that specially earmarked funds for the program were eliminated, and the team could have, but did not, choose to fund the program out of other Perkins funds.

In summary, the plaintiff has not established that Ronald Moon's affidavit is inconsistent with his deposition testimony. Accordingly, the motion to strike will be denied. Further, where plaintiff disagreed about the factual statements in Mr. Moon's affidavit, she frequently did so without reference to any contradictory evidence in the record or by referencing her motion to strike. *See Defendant's Statement of Facts*, Doc.

---

decision. Ms. Studdard's claims under the Fair Dismissal Act are not at issue in this proceeding.

40, ¶¶ 27, 28, 43, 45, 46, 47, 49, 50, 51, 52, 55, 56, 58, 65, 67, 72, 100, 107, 109, 113, 114 and *Opponents Responsive Submission*, Doc. 43. To the extent Mr. Moon's affidavit is uncontradicted by any evidence of record, the defendant is entitled to rely on it in support of the summary judgment motion.

## II.   The Defendant's Motion To Strike

On May 9, 2002, the court entered an order noting that plaintiff's evidentiary submission was deficient and affording her an opportunity to make a corrected submission. Although the defendant had pointed to several deficiencies in its reply submission, plaintiff's response to the court's May 9 order did not address any of the deficits.[6] Defendant thereafter filed this motion to strike. Although much of the plaintiff's submission did not comport with Exhibit D or the Federal Rules of Evidence, the deficits did not prejudice the defendant. The court has noted deficiencies where they have affected the court's ability to review the motion, (see footnotes 6 and 8) but even when the evidence is considered in the light most favorable to the plaintiff, the motion for summary judgment is due to be granted on the merits. Accordingly, the defendant's motion to strike will be denied.

## III.   The Motion for Summary Judgment

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[6] Indeed, counsel's response to the order indicates it thought little of the court's requirements. Rather than taking this opportunity to address the substantive problems with the evidentiary submission, which were amply documented in the defendant's reply, counsel chose to submit a cover sheet for a statute plaintiff had previously submitted as "evidence" (although it is readily available in the Alabama Code). (Doc. 46, 50). The court is caused to wonder whether counsel was really this obtuse, or was merely "thumbing its nose" at the court's procedures.

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also DeJulio v. Georgia*, 276 F.3d 1244, 1248 (11th Cir. 2001). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted); *see also Comer v. City of Palm Bay*, 256 F.3d 1186, 1192 (11th Cir. 2001); *Crawford-El v. Britton*, 523 U.S. 574, 600 n.22 (1998). The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met this burden, "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *see also Comer, supra*.

The court must grant a motion for summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249 (citations omitted); *accord Dzikowski v. NASD Regulation, Inc. (In re Scanlon)*, 239 F.3d 1195, 1198 (11th Cir. 2001); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). In rendering its decision, "[a] court 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000) (quoting *Reeves*, 530 U.S. at 150); *see also Comer, supra*.

### B. Discussion

#### 1. Termination

Ms. Studdard claims she was terminated for racially discriminatory reasons. Bessemer State contends it is entitled to summary judgment on Ms. Studdard's claims because she cannot establish a prima facie case and Bessemer State has articulated a legitimate, nondiscriminatory reason for its actions which plaintiff cannot show is pretextual.

The plaintiff has not pointed to any direct evidence of discrimination, and relies on circumstantial evidence presented under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified in *Texas Dept. of Comty. Affairs v. Burdine*, 450 U.S. 248 (1981). Under that framework, the plaintiff has the initial

burden of establishing a prima facie case. *McDonnell Douglas*, 411 U.S. at 802. Establishment of a prima facie case creates a presumption of discrimination and shifts to the employer the burden of producing admissible evidence of a legitimate, non-discriminatory reason for the challenged employment action. *McDonnell Douglas*, at 802. To satisfy the burden, defendant need only present evidence creating a genuine issue of fact as to whether it discriminated against the plaintiff. *Burdine*, 450 U.S. at 254-55. If the defendant articulates one or more such reasons, the presumption of discrimination is eliminated and the plaintiff must then come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Burdine*, 450 U.S. at 256; *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)(plaintiff's prima facie case, combined with sufficient evidence to show that the employer's asserted justification is false, permits the factfinder to conclude the employer unlawfully discriminated). *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000)(en banc).

Relying on, *inter alia*, *Weaver v. Casa Gallardo, Inc.* 922 F.2d 1515, 1525 (11th Cir. 1991), Ms. Studdard seeks to establish her prima facie case by proving she (1) is a member of a protected class, (2) was qualified, (3) was discharged, and (4) was treated differently than others similarly situated. *See Anderson v. WBMG-42*, 253 F.3d 561 (11th Cir. 2001). Only the fourth element is at issue. Ms. Studdard claims Bessemer State has laterally transferred similarly situated white employees and she also should have been

laterally transferred to one of the newly created jobs at Bessemer State rather than being required to compete for a position. In support of her contention, she claims that Bessemer State retained Leslie Romano, a Food Service Instructor, and Mike Hobson, an automobile program employee, after their programs were discontinued. The court has examined the proffered evidence and cannot find any reference to either Romano or Hobson. Doc. 43, pp. 10, 19, Plaintiff's Ex. 4. In Exhibit 4, the unidentified[7] deponent testified that an unidentified female instructor whose program closed volunteered to work in the bookstore until the end of her contract term since she was still being paid under the contract. The instructor thereafter competed for and received a support staff position. Doc. 43, Ex. 4, pp. 96-98. Ms. Studdard was not similarly situated to this employee, since her last day of work at Bessemer State, August 31, 1999, was the same date her contract expired.[8] Doc. 40, p. 6, ¶¶ 41, 42; Doc. 43, p. 4, ¶¶ 41, 42. Further, this unidentified employee was required to compete for her new position, so she was not treated differently than Ms. Studdard. The deponent further testified that Charles Murray was moved in a reorganization from the position of public information director to the assistant dean of instruction position. Doc. 43, Ex. 2. Al Cox was also mentioned, but the evidence concludes without providing details about Mr. Cox. Doc. 43, Ex. 2. The plaintiff has not pointed to, and the court cannot find, any evidence to support her

---

[7]The deposition excerpts comprising plaintiff's Exhibit 4 do not include any information about the identity of the deponent. The defendant pointed out the deficiency, but the plaintiff's response to the court's May 6, 2002, order did not remedy the situation. The court recognizes there are serious concerns about the relevancy and competency of this evidence, but will consider it to the extent possible.

[8]Although Ms. Studdard was on the payroll until Oct. 1, 1999, until her retirement benefits vested, there is no evidence she worked at Bessemer State after August 31, 1999. Doc. 40, ¶¶ 42, 131; Doc. 43, ¶¶ 42, 131; Doc. 41, Ex. 1, p. 13.

assertion that these employees discussed in Exhibit 4 were similarly situated and treated differently. This evidence does not establish a prima facie case and Bessemer State is entitled to summary judgment as to Ms. Studdard's claims of discriminatory termination.[9]

## 2. Failure to Hire.

Bessemer State encouraged the four employees displaced by the changes in Perkins funding to apply for four new positions which were being created. Ms. Studdard applied for all four positions and was interviewed for the jobs of Curriculum Specialist, Career Services Coordinator, and Teaching and Learning Coordinator.[10] Pursuant to the *Shuford* consent decree, a selection committee which was 50% female and 40% African-American was established for each position. As discussed above, each committee was required to choose the three top candidates to recommend to the college president, and the president was required to make his choice from those three candidates. Ms.

---

[9] In another portion of her brief, plaintiff argues that President Bailey laterally transferred Ron Moon, Debbie Marcus, and Cynthia Anthony, citing only "Bailey Depo., pp. 23-24" and "Bailey Depo. p. 26." Doc. 43, p. 26. Ms. Studdard also argues the previous positions held by Moon and Anthony were eliminated, citing "Bailey Depo., pp. 22-23, 31." Doc. 43, p. 27. The court did not find any deposition by President Bailey in Ms. Studdard's submission. Portions of President Bailey's deposition were included in defendant's Exhibit 28, but the court did not find the cited pages and did not find therein any support for Ms. Studdard's contentions. In Ms. Studdard's Exhibit 6, identified as a transcript of proceedings before the Hearing Procedures Panel at Bessemer State Technical College, the unidentified witness testified:

    Q:    In fact you have done that on several occasions with – actually, you have made reassignments in jobs without going through paragraph eight, haven't you?
    A:    Are you talking about a lateral transfer?
    Q:    No, sir, I'm talking about when Mr. Moon got moved up.
    A:    Expansion of a - -
    Q:    Of a job, yes, sir. You have made him dean of instruction and it wasn't advertised; is that correct?
    A:    I have expanded his job and added additional responsibilities. Now again that was submitted to the chancellor, submitted to the Court and approved in writing.

Doc. 43, Ex. 6, p. 72-73. To the extent this evidence is admissible, it directly contradicts plaintiff's assertion that Moon was laterally transferred. Rather, it establishes only that additional responsibilities were added to his job. The court examined the remaining submissions of both parties and did not find any evidencing a lateral transfer of Moon, Marcus, or Anthony.

[10] Renay Herndon, a black female whose position was eliminated as a result of lost Perkins funds, was hired as Retention and Assessment Coordinator. Ms. Studdard withdrew any claims related to this position. Doc. 43, p. 21, fn. 3.

Studdard was not recommended to President Bailey for any of the new positions.[11] Cynthia Anthony, a black female, served on all four selection committees. (Doc. 40, ¶ 97; Doc. 43, ¶ 97). Ms. Anthony testified that Ms. Studdard was not one of the three most qualified applicants for any of the positions. (Doc. 41, Ex. 29, pp. 108-109, 116-117, 120-122).

### a. The Prima Facie Case

In a case alleging failure to hire, the plaintiff must establish a prima facie case by showing (1) she is a member of a protected class; (2) she applied and was qualified for a position for which defendant was seeking applicants, (3) despite her qualifications she was not hired, and (4) the position remained open or was filled by a person outside the protected class. *Coutu v. Martin Co. Bd. of Educ.*, 47 F.3d 1068, 1073 (1995); *See Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999).

For this summary judgment proceeding, Bessemer State concedes that Ms. Studdard has established a prima facie case as to the Curriculum Specialist and Teaching and Learning Coordinator positions, but claims Ms. Studdard cannot establish the fourth prong of her prima facie case regarding the Career Services Coordinator position because it was filled by a black female, Dr. Sherrell Price.

A Title VII plaintiff need not always prove she was replaced by someone outside the protected class. *See Howard v. Roadway Express*, 726 F.2d 1529, 1534 (11th Cir. 1984); *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996)(age

---

[11] Dr. Sarah Pate, Ed.D., a white female, was hired for the Teaching and Learning Coordinator position, Dr. Sherrell Price, Ed.D., a black female, was hired for Career Services Coordinator, Dr. Wayne Matson, Ed.D., a white male, was hired as Curriculum Specialist, and Renay Herndon, a black female whose position was eliminated as a result of lost Perkins funds, was hired as Retention and Assessment Coordinator. (Doc. 41, Ex. 1, ¶¶ 28, 29, 35, 39).

discrimination). Proof that the employer chose a non-minority employee is not the only way to create an inference of unlawful discrimination. *Howard*, 726 F.2d at 1534-35. However, "the court must consider whether the fact that a minority was hired overcomes the inference of discrimination otherwise created by the evidence presented by the plaintiff." *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995). Courts considering such a situation have looked at several factors including the length of time between the discharge and the replacement, whether the replacement by the hired minority occurred after the filing of an E.E.O.C. complaint, and, if the hired person had a history with the employer, whether it was a positive history. *Id.* The parties have made no attempt to show any of the factors were present here. Ms. Studdard argues she has established a prima facie case of racial discrimination in hiring because (1) she was minimally qualified for the position, as evidenced by the committee's decision to interview her coupled with the *Shuford* mandate requiring interviews of qualified applicants; and (2) the position remained "open" for a period of time after her interview, while the selection committee and the president reduced the job qualifications and issued a new job vacancy announcement. Although factual questions remain, the court will assume plaintiff has presented minimally sufficient evidence of a prima facie case of discrimination.

        **b.**    **Pretext**

Ms. Studdard has not, however, presented any evidence from which a reasonable jury could conclude the defendant's articulated reasons for choosing candidates other than Ms. Studdard were pretextual. Bessemer State points to evidence that the three

persons hired to fill the Curriculum Specialist, Teaching and Learning Coordinator, and Career Services Coordinator positions had doctoral degrees, while Ms. Studdard has only a master's degree. Further, Bessemer State points to testimony that the selection committee concluded Ms. Studdard did not have all the qualifications desired for the positions. Finally, Bessemer State points to the *Shuford* decree, which provides that President Bailey could not hire anyone who was not recommended by the selection committee.

Ms. Studdard argues that Bessemer State could have deemed her program a priority or laterally transferred her to one of the four newly created positions without requiring her to go through a competitive hiring process, and she contends the failure to choose either option is evidence of pretext. It is not. Pretext is established by presenting sufficient evidence to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action, but were a pretext for discrimination. *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997). Here, the defendant has articulated three reasons that might motivate a reasonable employer, and Ms. Studdard must meet those reasons head on rather than simply quarreling with the wisdom of the reasons. *Chapman*, 229 F.3d at 1029.

As to the Teaching and Learning Coordinator and Curriculum Specialist positions, Ms. Studdard argues that doctoral degrees did not make Dr. Pate and Dr. Matson more qualified because the vacancy announcements did not require doctoral degrees. However, the defendant's choice of the applicants with more extensive

educations is a legitimate, non-discriminatory reason for the hiring decision, regardless of the minimal qualifications for the position.[12] This argument does not show the defendant's claimed reliance on doctoral degrees was pretextual, but merely quibbles with the decision. *Chapman*, 229 F.3d at 1030..

Ms. Studdard also claims she has completed more than 40 semester hours in the Doctor of Philosophy program at Michigan State. Again, this does not show the defendant's stated reason, that it chose candidates with doctoral degrees, is pretextual.

Ms. Studdard further argues that, as to the Career Services Coordinator position, she was not competing against Dr. Price in the first round of applications and interviews. It was only after the qualifications were reduced and new applications were received that Dr. Price submitted an application. Therefore, the defendant could not have relied on Dr. Price's degree to eliminate Ms. Studdard from the first round. However, the evidence shows that Ms. Studdard, like all applicants in the first round, was given an opportunity to compete the second time. There is no dispute that defendant ultimately chose Dr. Price to fill the position, and that Dr. Price had a doctoral degree while Ms. Studdard had only a master's degree. Moreover, Ms. Studdard has presented no evidence rebutting defendant's second articulated reason for its decision, that the selection committee did not determine Ms. Studdard was one of the three top candidates for the position. Ms. Anthony testified that the selection committee made its decision "based on the job duties and responsibilities as outlined in the job placement, job vacancy announcement, as well as background and experience that would lend

---

[12] We, as a society, have not yet reached the point where every employment decision must focus on and implement the lowest common denominator.

themselves to effectively performing those duties and responsibilities." Doc. 41, Ex. 29, p. 117.

Ms. Studdard has not presented evidence showing that the reasons Bessemer State articulated for its hiring decisions were pretextual, and Bessemer State is, therefore, entitled to summary judgment on these claims.

### 3. Retaliation

Ms. Studdard also claims she was terminated from her position and not hired for any new position due to retaliation for filing previous lawsuits.

On September 13, 1993, Ms. Hosea-Studdard filed an EEOC charge against Bessemer State claiming discrimination on the basis of race, and she pursued her claims in a lawsuit filed on August 21, 1995. The district court granted summary judgment for Bessemer State, and the Eleventh Circuit affirmed on December 31, 1997. *Hosea-Studdard v. Bessemer State*, 134 F.3d 386 (11th Cir. 1997). On October 26, 1995, Ms. Hosea-Studdard filed a second EEOC charge against Bessemer State, claiming discrimination on the basis of race, and she amended the charge in March or May of 1997. After the EEOC issued a right to sue letter, she brought a lawsuit on October 21, 1997. The district court granted summary judgment for Bessemer State and the Eleventh Circuit affirmed in part and reversed in part without a reported opinion on July 18, 2000. *Studdard v. Bessemer State Technical*, 228 F.3d 414 (11th Cir. 2000).

To establish a prima facie case of retaliation, the plaintiff must show: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *Bass v. Board of*

*County Comm'r*, 256 F.3d 1095, 1117 (11th Cir. 2001). To establish a causal connection, a plaintiff must show that the decisionmakers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated. *Id.* at 1119.

The decision to eliminate four positions, including Ms. Studdard's, was made by the SAT (Strategic Analysis Team). The decision to leave Ms. Studdard out of the candidates recommended to President Bailey in the hiring process was made by the selection committee. There is no evidence these decisionmakers knew about Ms. Studdard's protected activity. Ms. Studdard contends a jury could reasonably find the members of the SAT and the selection committee were aware of her protected activity based on the evidence that they were chosen by President Bailey. Doc. 43, p. 24. That President Bailey chose the team members is an insufficient basis for a finding that the members knew about Ms. Studdard's protected activity, particularly considering the absence of any other evidence raising an inference that the decisionmakers had such knowledge. *See, e.g. Clover v. Total System Serv., Inc.*, 176 F.3d 1346 (11th Cir. 1999)(evidence that decision-maker and individual with knowledge spoke did not raise inference that decision-maker was told of protected activity, because "could have told" is not the same as "did tell"), *cf. Goldsmith v. City of Atmore*, 996 F.2d 1155 (1993)(evidence that decisionmaker and person with knowledge talked prior to decision coupled with decisionmaker's inconsistent statements regarding whether plaintiff was subject of discussion was sufficient). The defendant is entitled to summary judgment as to Ms. Studdard's claims that the defendant eliminated the MIRROR program and failed to hire Ms. Studdard for a new position in retaliation for her protected activity.

Ms. Studdard also argues her retaliation claim must be sustained because President Bailey was aware she was engaged in protected activity, the appeal of an earlier lawsuit, when he made the decision to initiate *Shuford's* competitive hiring procedures rather than using the procedure to effectuate lateral transfers.[13] She has not pointed to any evidence supporting this argument.

The plaintiff must do more than show there was ongoing litigation between the parties to raise an inference that an adverse employment decision was causally connected to a protected activity. The cases finding a causal connection due to temporal proximity are based on evidence showing a temporal relationship between two points in time, such as the date an employee performs a protected activity and the date the employer makes an adverse employment decision. *See Clark County School District v. Breeden*, 532 U.S. 268 (2001)(comparing date of adverse decision with the date decisionmaker had knowledge of protected activity). To hold otherwise would mean that any plaintiff engaged in litigation with her employer could automatically prove a prima facie case of retaliation as to any adverse employment decisions during the pendency of a litigation and, incidentally, insulate herself from any requirements of her employer.

Based on the records in this district, the court takes judicial notice that Ms.

---

[13]Bessemer State denies that Ms. Studdard could have been laterally transferred and points to requirements mandated by *Shuford* prior to effectuating any lateral transfer. Lateral transfers in lieu of external solicitation of applicants may be effected under *Shuford* only if the permanent status employee is in a position at least equivalent to a vacant position in terms of salary schedule and level of responsibility, the president offers all equivalently positioned employees the opportunity to apply for and be considered for the lateral transfer, and the president obtained the names of potential black applicants for the position from the statewide database. Once the president reviews the potential black applicants and the employees positioned for lateral transfer, he has discretion to make a lateral transfer or open the application process. *Shuford*, 846 F.Supp. at 1539-40. Ms. Studdard has not presented evidence showing that Bessemer State offered lateral transfers to any of the employees displaced by the loss of Perkins funds.

Studdard filed her Notice of Appeal in CV 97-J-2788-S on June 30, 1999, a little over a month before Bessemer State sent her a letter announcing the termination of four positions and the creation of four new positions. *See Barbara Hosea Studdard v. Bessemer State Technical College, et al.,* CV 97-J-2788-S, Doc. 49. A factfinder might reasonably infer that President Bailey, as president of a small college engaged in employment litigation with Ms. Studdard since 1993, knew of the notice of appeal on or shortly after it was filed.

However, there is no evidence showing when President Bailey made, or might have made, the decision to require competition for the new positions. The record shows Congress changed the Perkins funding procedures in 1998, and the school became involved in complex and lengthy procedures designed by the state to comply with the legislative requirements for receiving the new funding. President Bailey could have made his decision at any time during the process and without evidence about when that decision was made, no reasonable factfinder could conclude President Bailey became aware of Ms. Studdard's June 30 appeal or any other protected activity shortly before he made the decision.

Nor is there any other evidence tending to show the decision was made in retaliation for a protected activity. Although the plaintiff can establish the decisionmaker's knowledge of her protected activity, she has not presented any evidence showing a causal connection between that knowledge and an adverse employment action. Accordingly, the defendant is entitled to summary judgment as to Ms. Studdard's retaliation claim.

## IV. Conclusion

A separate order in conformity with this opinion will be entered.

Done, this 30th of May, 2002.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE